THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Criminal No. GLR-23-136 |
| | : |
| IAN RICHARD HAWES, | : |
| | : |
| Defendant. | : |
| | : |

ooooOoooo

## GOVERNMENT SENTENCING MEMORANDUM

The United States of America, by and through Erek L. Barron, United States Attorney for the District of Maryland, and Harry M. Gruber and Bijon A. Mostoufi, Assistant United States Attorneys, moves this Court to sentence Ian Richard Hawes ("Hawes" or "Defendant") to one year of incarceration, supervised release of one year, restitution of $110,543, and a $25 special assessment. Hawes' conviction for willful failure to file his 2016 taxes involved a serious tax loss to the United States in connection with his creation of a "do nothing" political action committee ("PAC") that raised over $1 million and generated more than $400,000 in unreported 2016 personal income for Hawes.

### Hawes's Criminal Conduct

In his plea agreement, Hawes stipulated that from 2014 to 2015, Hawes was employed as a software engineer doing web development and information technology work. ECF 7-1. He created a webpage designed to assist a client in accepting contributions for its advocacy organization. *See id*.

In November 2015, Hawes registered the domain name "dinnerwithtrump.org," and in May 2016, Hawes created a web page for "americanhorizons.org." *See* Ex. 1 (domain registration records). Below are some images from the dinnerwithtrump.org website and its

1

advertisements.





In June 2016, Hawes established and formally registered American Horizons as a Super PAC with the Federal Election Commission ("FEC"). *See* Ex. 2 (Statement of Organization, FEC Form 1). The Statement of Organization listed Hawes as the Custodian, Treasurer, and contact for American Horizons. *Id*. On June 10, 2016, American Horizons filed a Form 8871, Political Organization Notice of Section 527 Status, with the Internal Revenue Service ("IRS"). *See* Ex. 3 (American Horizons IRS Form 8871 filing).

Beginning in May 2016, American Horizons solicited political contributions on Facebook and the "dinnerwithtrump.org" website by advertising a chance to win dinner with then-Presidential Candidate Donald J. Trump ("Candidate Trump"). Although the advertisements did not directly request donations, they indicated that contestants could double their chances of

2

winning by making a donation to the PAC.   From June to November 2016, American Horizons received over $1 million from approximately 20,000 donors.   See Ex. 4 (FEC Data of American Horizons Receipts).

Many of the contributions involved small dollar donations from individuals who thought they were genuinely assisting in Candidate Trump's election efforts.   See Ex. 5.   The comments on the Facebook page created by the Defendant show how donors felt that their donations were really supporting Candidate Trump and would be used for his election campaign.   See Ex. 5.   Some thought they had a realistic chance of getting dinner with the President, and that their chances were increased by donating to the PAC.   See Ex. 6.

In contrast to the purported purpose of the American Horizons PAC, the Defendant's private Facebook comments painted a far different picture of Hawes' efforts.   On or about October 23, 2016, Hawes wrote that "it's insanely easy to start a PAC."   Ex. 7 at 6.   In his private messages, Hawes bragged that he had made "a killing" with the PAC.   Id. at 5.   Hawes claimed that "as long as you file everything right it's completely legal."   Id.   In other messages, Hawes referenced his PAC as "bullshit," a "stunt," and a "Scam PAC[ ]."   Id. at 4, 6.   Hawes wrote about how new regulations were soon to be enacted, in part because of the type of conduct that individuals such as Hawes had undertaken.   Id. at 4.   Hawes further bragged that his friend would be "seeing me on CSPAN3."   Id.   Contrary to the public advertisements, it appears that the Trump dinner was far from definite, and Hawes himself acknowledged that most of the money was retained by him or his entities.   See Ex. 8.   Further, the Defendant's Facebook messages demonstrate how little remorse he had for his behavior, appearing boastful, accepting credit that Candidate Trump's supporters had been "trolled for a cool mil," and commenting that it would be tough to do his scam PAC again because "Donor fatigue is pretty heavy at this point."   Ex. 7 at 3, 8.

On August 29, 2016, the official Trump Campaign disavowed any association with American Horizons and stated that it had not received any money from American Horizons. *See* Ex. 9 (Trump Disavowal Notice, FEC Form 99). The Trump Campaign also sent American Horizons a cease-and-desist letter, accusing American Horizons of offering a prize it could not deliver. On January 31, 2017, Hawes filed a notice with the FEC to terminate the American Horizons PAC. *See* Ex. 10 (FEC Termination). On February 3, 2017, the FEC accepted termination of the American Horizons PAC. *See* Ex. 11 (FEC Termination). The government has found no evidence that a winner was ever awarded the PAC's advertised dinner contest.

With respect to the disbursement of PAC funds, none of the funds appear to have been sent to any political campaigns, including that of Candidate Trump. Refund payments to contributors totaled $36,773, and approximately $400,000 in PAC funds were paid to Facebook for advertising the PAC. *See* Ex. 13 (FEC Record of Disbursements). More than $350,000 of PAC funds were used by Hawes for personal expenditures, including to pay off personal credit card debt and student loans, to pay for an engagement ring valued at more than $40,000, a $30,000+ wedding at the Hyatt Chesapeake on the Eastern Shore, yacht rentals that included more than $3,000 in food and beverage costs, to pay for wedding rings, to pay for personal vacations to Orlando, Miami, the Bahamas and Paris, France, the purchase of a new Audi A6, and for a down payment for his single family residence in Catonsville, Maryland. *See* Exs. 14, 15, 16, 17, 18, 19, 20. Hawes' engagement photo on the yacht, the glittering engagement ring he purchased, his trip to Paris, and his new car are shown below from his online accounts.



In his plea agreement, Hawes stipulated that during the 2016 tax year, Hawes had taxable income of $407,917, which consisted of $375,337 in consulting income and $38,780.00 in wages. ECF 7-1. Despite having filed Forms 1040 for tax years 2012 through 2015, and filing joint Forms 1040 with his spouse for tax years 2017 through 2021, Hawes chose not to file a federal tax return in 2016 when he had considerable income from the American Horizons PAC. In his plea agreement, Hawes further stipulated that the tax due and owing to the IRS from his failure to file in 2016 was $110,543. *See id.*

### The Advisory Sentencing Guidelines Calculation

The government agrees with the advisory federal guidelines calculation in the presentence report prepared by U.S. Probation ("PSR"). Pursuant to the plea agreement and the

PSR, the base offense level for Hawes' criminal conduct is 16 because the tax loss is more than $100,000, but less than $250,000. *See* USSG § 2T.1.(a); USSG § 2T4.1(f). Based on a three-point reduction for timely acceptance of responsibility, the adjusted offense level should be 13. With an adjusted offense level of 13 and a criminal history category I, Hawes's advisory guidelines range is 12–18 months. However, because the statutory maximum for Hawes's offense is less than the maximum of the guideline range, the advisory guidelines sentence/range is capped at the statutory maximum of one year in prison.[1] PSR at ¶ 58.

### The 3553(a) Sentencing Analysis & Government Sentencing Recommendation

As this Court is well aware, the Court is required to impose a reasonable sentence that is no greater than necessary based on multiple factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," the need "to promote respect for the law," the need for just punishment, and the need for both specific and general deterrence. 18 U.S.C. § 3553(a).

The government submits that a sentence of one year of incarceration would constitute a reasonable sentence pursuant to 18 U.S.C. § 3553(a), and the Supreme Court's decision in *Gall v. United States*, 552 U.S. 38, 51 (2007). It is necessary based on "the nature and circumstances of the offense," "the history and characteristics of the defendant," the need "to promote respect for the law," and the need for both specific and general deterrence. 18 U.S.C. § 3553(a).

Hawes' criminal conduct involved a serious failure to file his 2016 tax return, which led to a significant tax loss to the federal government. Hawes' failure to file was the culmination of

---

[1] Even under the soon to be enacted version of the sentencing guidelines, Hawes' advisory guidelines level would be reduced two levels for lack of a prior criminal history, *see* U.S.S.G. § 4C1.1 (November 2023), but his acceptance of responsibility credit would only be two versus three levels, resulting in an offense level of 12, and an advisory guidelines sentence of 10-16 months, which is capped at one year by statute. Regardless of what sentence the Court imposes, the government urges the Court to find that it would apply the same sentence if this sentencing were held after November 1, 2023, thereby avoiding any potential resentencing procedures.

wrongful conduct with respect to the American Horizons PAC that he self-described as a scam designed to allow him to make "a [financial] killing." *See* Ex. 7 at 5. In short, the Defendant exploited PAC regulations to make money, buy nice things and take trips, and then he compounded those decisions by choosing to avoid paying taxes on the income he obtained.

Throughout his operation of this PAC, Hawes displayed contempt for hard working Americans who sought to support their political views and help their candidate of choice win election. The donors to his PAC believed they were helping then-Candidate Trump, and also had a genuine chance to have "dinner with Trump."

In terms of his personal history and characteristics, Hawes did not need to engage in this crime. He had a good childhood and upbringing that involved, by his own account, a "comfortable, middle-class life." PSR ¶ 34. Hawes has been employed for most of his adult life and has an impressive net worth. *See* PSR ¶¶ 47–54. Thus, not only did Hawes not need engage in these activities to make money, but he certainly could have paid his taxes due and owing. More than 20,000 people donated to this PAC, which benefited no one except Hawes and the advertising companies that promoted his PAC (and thus Hawes). Hawes lived the good life and short-changed the government by failing to pay his taxes. The government submits that a sentence of one year in prison is appropriate and necessary to punish Hawes for his illegal tax offense, demonstrate the need to respect the law, and deter Hawes and others similarly situated from this type of activity in the future.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court impose a term of imprisonment of **one year in prison, followed by 1 year of supervised release, and restitution to the IRS of $110,543.** The government further submits that this may be an appropriate case to consider a criminal fine.[2]

                                      Respectfully submitted,

                                      Erek L. Barron
                                      United States Attorney

                                      /s/
                                      Harry M. Gruber
                                      Bijon A. Mostoufi
                                      Assistant United States Attorneys
                                      36 S. Charles Street, 4th Floor
                                      Baltimore, Maryland 21201-2692
                                      (410) 209-4835

---

[2] Pursuant to the PSR, Hawes appears to have considerable personal assets and the financial ability to pay a fine. The advisory fine range is $5,500 to $55,000. The maximum fine by statute is $25,000. *See* 26 U.S.C. § 7203. According to the PSR, imprisonment in a BOP facility for one year will cost the taxpayer approximately 45,000. *See* PSR ¶¶ 65-68.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Government's filing was served via email on the Defendant's counsel.

_____/s/_____
Harry M. Gruber
Assistant United States Attorney